UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ZAKIYYA SHABAZZ, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:07-0653 |
| ) | Judge Echols |
| ASURION INSURANCE SERVICE and ) | |
| ASURION CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court is "Plaintiffs' Aemended [sic] Motion to Conditionally Certify Class and Facilitate Class Notice" (Docket Entry No. 33). Defendants, Asurion Insurance Service and Asurion Corporation (collectively "Asurion") have responded in opposition to that Motion, and Plaintiffs have replied.

## I. FACTUAL BACKGROUND

This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, brought by Plaintiffs purportedly on behalf of non-exempt, hourly employees who worked or work at certain Asurion call centers. Specifically, Plaintiffs seek conditional class certification and the issuance of notice to non-exempt hourly employees who have been employed since June 19, 2004 at Asurion call centers located at 648 Grassmere Park and 5040 Linbar Drive in Nashville, Tennessee, and at an Asurion call center located in Houston, Texas.

Plaintiffs and the individuals they seek to represent are or were employees of Asurion. Asurion, which is headquartered in Nashville, Tennessee, is the country's largest provider of wireless roadside assistance and wireless handset insurance programs. Plaintiffs contend that it was Asurion's

1

deliberate practice and policy at its call centers in Nashville and Houston to deny earned wages and overtime pay for employees who worked as customer services representative, claims representatives, verification representatives, quality assurance coordinators, technical support representatives and/or similar non-exempt hourly positions at those call centers. This policy, Plaintiffs allege, has resulted in significant savings in payroll costs because there are literally thousands of such employees.

In support of its Amended Motion for Class Certification and Notice, Plaintiffs have filed four Declarations.[1] Those declarations were filed by employees who worked, or continue to work, as Verification Representatives, or Customer Service Representatives at the call centers located in Nashville.

In general, the Amended Complaint and the Declarations claim that employees were required to work before clocking in and work after clocking out. Specifically, Plaintiffs allege that they were instructed or required by their managers or supervisors to report to work fifteen to twenty minutes prior to their scheduled start times. During that period, employees were required to turn on and boot their computers, start various computer programs, and log on to various computer systems. Plaintiffs claim that these tasks were integral and indispensable to their principal work activities, but they were not paid for the tasks and instead only clocked in after they punched in an identification number on their phones.

Plaintiffs claims that they were also required to work off of the clock at the conclusion of their scheduled work days. Plaintiffs claim that once they logged of their phone, this caused them to clock

---

[1] A fifth Declaration, filed by Lakeisha Steele ("Steele") who was the lead Plaintiff, was withdrawn pursuant to an Order of this Court (Docket Entry No. 45), after the parties filed a Stipulation of Dismissal of Steele's claims (Docket Entry No. 42), and Steele filed a Motion to Withdraw her declaration. (Docket Entry No.43).

2

out. After so clocking out, they were required to close down and log off all the computer programs and applications utilized in performing their job duties.

In response to Plaintiffs' Amended Motion for Class Certification and Notice and accompanying Memorandum, Asurion has filed a 47-page Memorandum, along with twenty Declarations from Asurion call center employees. Generally, the employees claim in their Declarations that they were never instructed to report to their work stations to begin performing work before logging into the time keeping system and that if they arrived at work early they did so voluntarily to socialize or accomplish personal tasks. Those employees also claim that they were paid for all time worked and repeatedly instructed to "clock into work" before performing any work-related tasks. They also claim they were not required to work off-the-clock at the end of their scheduled work day.

## II. ANALYSIS

A collective action under the FLSA "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing[.]" 29 U.S.C. § 216(b). Unlike typical class actions under Rule 23 of the Federal Rules of Civil Procedure, a collective action under the FLSA requires individuals to opt-in to the action instead of opting out. Douglas v. GE Energy Reuter Stokes, 2007 WL 1341779 at *2 (N.D. Ohio 2007). Thus, in a collective action under the FLSA, "'no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively opted into the class; that is give his written, filed consent.'" Id.

Generally, a two step process is utilized by a court in determining the propriety of a collective action in a FLSA case. One court has recently described the process as follows:

3

> The first step is conducted early in the litigation process, when the court has minimal evidence and consists of a preliminary inquiry into whether the plaintiff's proposed class consists of similarly situated employees who were collectively "the victims of a single decision, policy, or plan[.] If the plaintiff meets this lenient standard, the court grants only conditional certification for the purpose of notice and discovery.
> The second step of this process is usually conducted after merits discovery has occurred, and consists of a specific factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action. At this second stage, the court will again make a certification decision based on the "similarly situated" standard, but will require a higher level of proof than was necessary at the first stage for conditional certification. If the conditional group of plaintiffs does not meet this standard at the second stage, the group is then decertified, the opt-in plaintiffs are dismissed without prejudice and any remaining plaintiffs are permitted to move onto the trial stage of litigation.

Lugo v. Farmer's Pride Inc., 2008 WL 638237 at *3 (E.D. Pa. 2008)(citation omitted).

With regard to the first stage, "[p]laintiffs who seek to certify a collective action under the FLSA 'bear the burden to establish that they and the class they wish to represent are similarly situated.'" Crawford v. Lexington-Fayette Urban County Gov't., 2007 WL 293865 at *4 (E.D. Ky. 2007)(citation omitted). To apprise other potential class members, representative plaintiffs typically seek to have court-supervised notice issued. "[N]otice to prospective co-plaintiffs should be authorized if the named plaintiff 'demonstrates that she is similarly situated to the other employees she seeks to notify of the pendency of the action.'" Id. (citation omitted). This requires a "modest factual showing" which is generally "fairly lenient." Id. (collecting cases). "[I]n order to meet this standard, Plaintiffs must simply 'submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated plaintiffs exist.'" Olivo v. GMAC Mortgage Corp., 374 F.Supp.2d 545, 548 (E.D. Mich. 2004)(citation omitted).

In this case, Asurion's 47-page Memorandum and accompanying Declarations effectively ignore the requirement that Plaintiffs need only establish a "modest factual showing" that there are similarly situated employees in order to gain initial conditional class certification and the issuance

of Notice. Asurion goes into great detail about the difference in its call centers and the different types of classifications given to employees who handle calls from customers. Such arguments are more appropriately raised at the second stage, or decertification stage, of a collective action.

"At the second stage, which is typically precipitated by a motion for decertification by the defendant usually filed after discovery is largely complete and the matter is ready for trial[,] ... the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." Anderson v. Cagle's, Inc., 488 F.3d 945, 952 (11th Cir. 2007)(citation omitted). "The 'similarly situated' standard at the second stage is less 'lenient' than at the first, as is the plaintiffs' burden in meeting the standard." Id.

In contrast, and as already indicated, Plaintiffs' burden at the initial stage is minimal. In fact, mere allegations in a complaint have been deemed sufficient by some courts for the issuance of notice in a collective action, while other courts require supporting documentation such as Affidavits or Declarations. See Belcher v. Shoney's Inc., 927 F.Supp. 249, 151 (M.D. Tenn. 1996)(discussing cases).

In this case, there is more than the mere allegation in the Amended Complaint to establish a colorable basis that there exists similarly situated employees at Asurion's Nashville facilities who were allegedly required to work off the clock. Plaintiffs have submitted declarations from four employees at those facilities.

In a Declaration, Jackson Conley ("Conley") indicates that he is a full time Asurion employee at one of the Nashville call centers. Initially he was hired as a customer service representative, but later was promoted to verifications representative. In both positions, he spent most of the time answering phone calls and processing insurance claims from customers who purchased insurance for cell phones issued by companies such as Verizon, T-Mobile and Cricket. Conley claims that his

5

managers and supervisors repeatedly instructed him to report to work fifteen to twenty minutes prior to his scheduled start time in order to turn on and boot up his computer, start various programs, log into various systems, and other preparatory work, and that he was not paid for those hours. Conley also claims he has witnessed hundreds of his fellow Asurion call center employees working unpaid hours. Conley claims that since the filing of this lawsuit, Asurion has allowed its employees more time to log onto their computers and systems and perform other tasks while on the clock.

Plaintiff Malinda Edging, a former Asurion employee, has submitted a Declaration stating that she worked from August 2005 until February 2006, as a technical support representatives at Asurion's call center located at 5040 Linbar Drive in Nashville, Tennessee. Edging left her employment after an accident, but returned to the Linbar Dive facility in January 2007 and remained working there as a technical support representative until June 2007. As a technical support representative, Edging was required to take phone call from customers who received replacement equipment from Asurion for lost, damaged, or stolen equipment. Edging claims that she was allowed three minutes to turn on and boot up her equipment, start various programs, log into various systems and perform other preparatory work prior to taking calls, but that this allocated time was insufficient. Edging claims she and other Asurion employees took fifteen to twenty minutes to complete these tasks, but the employees were not paid for the time. Edging claims that she also was frequently not allowed to take scheduled breaks. Edging claims she regularly witnessed other employees at the Nashville facility working unpaid hours in preparation for work.

Plaintiff Ross M. Bates ("Bates") was employed as a technical support representative at Asurion's Linbar Drive facility from June 2005 until November 2006. In his Declaration, he too claims that the vast majority of his time working for Asurion was spent on the phone. He claims that his managers required him to be ready to take calls at his scheduled start time. However, it took him

6

from ten to fifteen minutes to log on to his computer and get the programs running in order to be ready to take phone calls. He claims that time was uncompensated, as was the five to seven minutes a day it took him to close down and log off of the computer after he had clocked out. Like Edging, Bates claims he was regularly denied scheduled breaks. Bates claims that he regularly witnessed other Asurion employees at his facility working uncompensated time as set forth in his Declaration.

Plaintiff Zakiyya Shabazz ("Shabazz") filed a Declaration in support of the request for conditional class certification and the issuance of notice. Shabazz claims he worked at both Nashville call centers from July 2004 until March 2007. He initially was hired as a technical assistant representative at the Linbar facility but in 2005 transferred to the Grassmere Park facility where he worked as a verifications representative. Shabazz claims that in both positions he spent most of the time on the phone. He claims that he was instructed by his supervisors and managers to be ready to take calls at his scheduled start time and allowed three minutes to turn on and start up the computer, start up various programs, log on to various programs, and perform other necessary work in order to take telephone calls. Those tasks took from 15 to 20 minutes and that time was not compensated. He also claims that once he logged off the telephone thereby clocking out, he was required to log off his system and close out his computer programs. This took anywhere from five to seven minutes and that time was not compensated. Shabazz also claim he was regularly denied scheduled breaks. Shabazz claims that during his tenure working at the Asurion call centers in Nashville, he witnessed hundreds of other Asurion call center employees working unpaid hours outside their scheduled shift as described in his Declaration.

The Amended Complaint, coupled with the Declarations provide a "modest showing" that at least some call center employees who handled telephone calls from customers at Asurion's Nashville call centers may not have been paid for all time worked. See, Sniffen v. Spectrum Indus. Servs.,

7

Case 3:07-cv-00653    Document 87    Filed 04/10/08    Page 7 of 9 PageID #: 1873

2007 WL 1231772 at * 2 (S.D. Ohio 2007)(even under the "more restrictive standard," the "affidavits of the two named plaintiffs display that potential class members are similarly situated"). Plaintiffs are entitled to look into the matter further, and to do so they need to provide notice of their claims to other Nashville call center employees.

While Plaintiffs have presented at least a modest showing of a colorable claim for uncompensated work in relation to the time spent preparing for work prior to clocking in and in relation to the time spent performing working after clocking out at Asurion's Nashville facilities, the same cannot be said about the Houston call center. Plaintiffs have not worked at the Houston facility and have not presented a declaration from any employee who works or worked at the Houston call center. Apart from mere allegations contained in the Amended Complaint, the only suggestion of uncompensated work by employees at the Houston call center is contained in statements made by Conley in his Declaration. Conley claims that he often spoke with unidentified employees at the Houston call center who "relayed" to him they too were not compensated for performing off-the-clock tasks which were necessary for their work. Conley's statements in this regard are not based upon personal knowledge, are hearsay under Rule 802 of the Federal Rules of Civil Procedure, and therefore need not be considered in determining the propriety of certifying a conditional class or issuing notice. Clark v. Dollar General Corp., 2001 WL 878887 at *2 (M.D. Tenn. 2001). Accordingly, Plaintiffs' request that hourly employees at Asurion's Houston call center be a part of the conditional class and receive notice will be denied.

### III. CONCLUSION

In light of the foregoing, the Court finds that Plaintiffs have established a "modest showing" that there exist similarly situated individuals who work or worked at Defendants' call centers in Nashville who were not paid compensable time spent preparing for work or finishing work as

8

customer service representatives, claims representatives, verification representatives, quality assurance coordinators, technical support representatives, and/or any similar non-exempt hourly positions. However, the Court finds that Plaintiffs' have failed to make such a showing with respect to Asurion's Houston call center. Accordingly, "Plaintiffs' Aemended [sic] Motion to Conditionally Certify Class and Facilitate Class Notice" (Docket Entry No. 33) will be granted in part and denied in part. The Motion will be granted with respect to all hourly, non-exempt Asurion employees described above who performed uncompensated work since June 19, 2004, at Defendant Asurion's call centers at 648 Grassmere Park and 5040 Linbar Drive in Nashville, Tennessee. The Motion will be denied with respect to Plaintiffs' request for conditional class certification and the issuance of notice to employees of Defendant Asurion's Houston, Texas call center, but said denial will be without prejudice to Plaintiffs' right to later seek class certification and notice in relation to the Houston, Texas call center should discovery in the matter warrant such a request.

To facilitate notice, the Court will order Defendants to produce to Plaintiffs the names and last-known addresses of all non-exempt hourly employees described above at Defendants' two call centers in Nashville, Tennessee from June 19, 2004, to the present. The Court will also require counsel for the parties to meet face-to-face and confer in an effort to arrive at a stipulated proposed Notice to the putative members which apprises said conditional class of the nature of Plaintiffs' claims and Defendants' defenses, and sets forth a deadline for potential Plaintiffs to opt-in to the lawsuit. If the parties cannot agree on the Notice to be sent to potential class members, the Court will formulate the Notice after consideration of the submissions made by counsel for the parties.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE